# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

RACHED MERHEB,
d/b/a/ STAR LIMO,

    Plaintiff,

vs.                                                                     No. 1:15-CV-00522 MV/KK

RYAN JERMAN,
Director, Transportation Division,
New Mexico Public Regulation Commission,
in his individual capacity

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Ryan Jerman's Motion to Dismiss Amended Complaint [Doc. 22]. Plaintiff Rached Merheb timely filed a Response [Doc. 28] and Defendant replied [Doc. 29]. The Court, having considered the Motion, briefs, relevant law, and being otherwise fully informed, finds that the Motion is well taken and will be granted.

## FACTUAL BACKGROUND

Plaintiff Rached Merheb, d/b/a Star Limo, LLC ("Plaintiff") operates a commercial limousine service in the State of New Mexico. [Doc. 21 ¶ 9]. New Mexico Public Regulation Commission ("PRC") regulations require operators of luxury vehicle services to obtain a "certification," while operators of van services must obtain a "warrant." [Doc. 21 ¶ 12]. Plaintiff began the process of obtaining his certification to operate a luxury vehicle service in 2003, and was ultimately granted a certification twenty-one months later. [Doc. 21 ¶¶ 10-11]. The certification process was apparently arduous; Plaintiff indicates that he had to apply three times,

1

and that he incurred a loss of income during this period as well as the cost of attorneys' fees. [Doc. 21 ¶ 10].

With respect to Count I, Plaintiff alleges that the PRC allowed other car services to operate "unlawfully."[1] According to Plaintiff, in 2002, Fantasy Limo operated luxury vehicles with a warrant, rather than a certification. [Doc. 21 ¶ 13]. Additionally, Plaintiff asserts that, prior to 2002, Premiere Limo operated without a warrant or a certification. When Premiere Limo was notified of their noncompliance, PRC helped them complete the required paperwork and the company obtained proper licensure within one year. [Doc. 21 ¶ 14]. Plaintiff also alleges that both Cary Limo and Luxury Limo operated luxury vehicles with a warrant, rather than a certification. [Doc. 21 ¶ 15].

In April 2009, Plaintiff emailed the PRC regarding another car service, Santa Fe Valet, which Plaintiff alleges was "operating illegally." [Doc. 21 ¶ 21]. Plaintiff asserts that Santa Fe Valet was operating a luxury service under warrant, rather than a certificate.

Plaintiff further alleges that "The Garcia Family" has been operating two separate businesses to unlawfully reduce competition. [Doc. 21 ¶ 22]. Plaintiff asserts that other companies, including Premier Limo, have been illegally offering coupons and promotions to limit competition. [Doc. 21 ¶ 23].

Finally, Plaintiff alleges, "[a]t times relevant to this complaint, World Travel Management, LLC . . . applied for a warrant in regards to business operation of van services but was also operating luxury vehicles illegally." [Doc. 21 ¶ 16]. He asserts that in 2012, World Travel Management operated "in direct competition with Plaintiff, but without the required licensure from the State of New Mexico subject to Defendant's regulation and oversight." [Doc.

---

[1] While Plaintiff discusses many other car service businesses in the Amended Complaint, Count I only references World Travel Management, LLC. Additionally, Defendant notes that the alleged unlawful operation by every car service mentioned except World Travel Management occurred while Defendant was not working at the PRC.

2

21 ¶ 30]. Plaintiff alleges that Defendant knew or had reason to know of World Travel Management's unlawful operation. Plaintiff asserts that he lost income as a result of this competition, and that he "has not been able to attend to his business properly due to the repetitive harassment by the PRC with investigations and audits." [Doc. 21 ¶¶ 31-32]. Lastly, Plaintiff alleges that "the PRC has exhibited on numerous occasions inconsistencies as to treatment of businesses attempting to obtain licensures in the State of New Mexico." [Doc. 21 ¶ 33].

With respect to Count II, Plaintiff alleges various incidents of retaliation against him for reporting the unlawful operation of other car services to the PRC. In 2008, Plaintiff attempted to incorporate his business as a limited liability corporation ("LLC"), and was informed that, because he did not apply for a name change with the PRC, the addition of LLC to his business name was not in compliance with PRC regulations. [Doc. 21 ¶ 17]. In 2010, Plaintiff received a cease and desist letter with respect to the operation of his business under the name "Star Limo, LLC."[2] Plaintiff asserts that after incorporating his business, he had to obtain new licenses from the PRC to operate his business. [Doc. 21 ¶ 18-19]. Plaintiff indicates that he filed a complaint with the PRC, which stated that "other similar businesses were operating similarly." [Doc. 21 ¶ 20].

Plaintiff alleges that after filing a complaint against Devine Limo for allegedly unlawful practices, Plaintiff was audited twice. [Doc. 21 ¶ 25]. Plaintiff further asserts that the car service, Uber, should be required to follow the same regulations as other car services.

Plaintiff indicates that he rented one of his vehicles to a third party and an accident occurred. Apparently the PRC conducted an investigation of the incident, which caused Plaintiff embarrassment and inconvenience. [Doc. 21 ¶¶ 27-29].

---

[2] Plaintiff does not indicate who sent this letter. Presumably, it was sent by the PRC.

## PROCEDURAL HISTORY

This is the second time the Court is considering a motion to dismiss in this matter. On March 13, 2015, Plaintiff filed a Complaint for Denial of Equal Protection in the first Judicial District Court, County of Santa Fe. [Doc. 1-1]. Defendant removed the action to this Court. [Doc. 1]. The Complaint alleged that a limousine company called World Travel Management, LLC operated "in direct competition with the Plaintiff but without the required licensure." [Doc. 1-1 ¶ 11]. The Complaint further alleged that "Defendant knew and had reason to know of World Travel Management, LLC's operation in direct contravention of the regulation and licensing requirements of the State of New Mexico." [Doc. 1-1 ¶ 12]. Plaintiff asserted that Defendant violated his right to equal protection under the law by (1) "failing to intervene to prevent the unlicensed operation of . . . World Travel Management, LLC," [Doc. 1-1 ¶ 15] and (2) retaliating against Plaintiff for reporting the unlicensed operation of World Travel Management, LLC. [Doc. 1-1 ¶ 19]. Both of these claims were brought under a "class of one" theory of equal protection.

On June 25, 2015, Defendant filed a motion to dismiss for failure to state a claim [Doc. 4]. On January 27, 2016, this Court issued a Memorandum Opinion and Order denying Defendant's Motion to Dismiss. [Doc. 20]. Without expressing an opinion on the merits of Plaintiff's case, this Court recognized that a "class of one" theory of recovery is cognizable under Tenth Circuit precedent, and afforded Plaintiff the opportunity to amend his complaint. [Doc. 20 at 4].

On February 26, 2016, Plaintiff filed an Amended Complaint asserting the same two claims against Defendant, but with additional factual allegations. [Doc. 21]. Specifically, the Amended Complaint asserts that (1) Defendant failed to intervene to prevent a competitor

business from operating without a license, and (2) Defendant retaliated against Plaintiff for reporting this competitor's unlicensed operation. As in the original Complaint, Plaintiff brings both of these claims under a "class of one" theory of equal protection.

On March 11, 2016, Defendant filed the instant Motion to Dismiss, arguing he is shielded by qualified immunity from Plaintiff's "class of one" equal protection claims.

**LEGAL STANDARD**

I. <u>Motion to Dismiss for Failure to State a Claim</u>

Pursuant to Rule 12(b)(6), a Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a 12(b)(6) motion, the Court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1142 (2010).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Accordingly, while the Court

must take all of the factual allegations in the complaint as true, "a plaintiff armed with nothing more than conclusions" cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 679.

II. Qualified Immunity

"[T]he qualified immunity defense shields government agents from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) (internal quotations omitted). "[T]he entitlement is an *immunity from suit* rather than a mere defense to liability." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). As such, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." 516 U.S. at 227.

After a defendant asserts a qualified immunity, "the plaintiff initially bears a heavy two-part burden." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). The plaintiff must demonstrate (1) "that the defendant's actions violated a constitutional or statutory right," and (2) "that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id.* (internal citations removed). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001). The Court has "the freedom to decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). Although the Court views the evidence in the light most favorable to the nonmoving party, "the record must

clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendant [is] entitled to qualified immunity." *Gross*, 245 F.3d at 1156.

**DISCUSSION**

For the reasons set forth below, the Court agrees that Defendant is entitled to qualified immunity from Plaintiff's equal protection claims. With respect to Count I, Plaintiff has not demonstrated that failing to intervene to prevent the unlicensed operation of Plaintiff's competitors violates a clearly established constitutional right. With respect to Count II, Plaintiff has failed to allege a constitutional violation under the "class of one" theory of equal protection. Accordingly, Defendant's motion to dismiss will be granted.

   I.   <u>Count I: Failure to Intervene to Prevent Unlicensed Operation</u>

Count I alleges that Defendant failed to intervene to prevent the unlicensed operation of World Travel Management, LLC. To survive Defendant's assertion of qualified immunity, Plaintiff must "come forward with facts or allegations sufficient to show . . . that the law was clearly established when the alleged violation occurred." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988). "A constitutional right is clearly established when, at the time of the alleged violation, the contours of the right were sufficiently clear that a reasonable official would understand that his actions violate that right." *Lundstrom v. Romero*, 616 F.3d 1108, 1118-19 (10th Cir. 2010) (citation omitted). "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Fisher v. City of Las Cruces*, 584 F.3d 888, 900 (10th Cir. 2009) (citation omitted). Accordingly, a "plaintiff must do more than identify in the abstract a clearly established right and allege that the defendant has violated it." *Lundstrom*, 616 F.3d at 1119. "[P]laintiff must show legal authority making it

7

apparent that in light of pre-existing law a reasonable official would have known that the conduct in question violated the constitutional right at issue." *Id.*

Furthermore, Count I alleges a "class of one" theory of equal protection. To avoid dismissal, "plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity . . . and demonstrate a substantial correspondence between the conduct in question and prior law . . . establishing that the defendant's actions were clearly prohibited." *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995) (internal citations omitted).

Plaintiff offers no legal authority supporting the claim that Defendant's alleged failure to intervene to prevent the unlicensed operation of a competitor business violated a clearly established constitutional right. While Plaintiff correctly notes that "the qualified immunity analysis involves more than 'a scavenger hunt for prior cases with precisely the same facts,'" *Cavanaugh v. Woods Cross City*, 625 F.3d 661, 666 (10th Cir. 2010) (quoting *Casey v. Fed Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007), the Court must still look to "Supreme Court or Tenth Circuit precedent on point or clearly established weight of authority from other courts finding the law to be as the plaintiff maintains." *Lundstrom*, 616 F.3d at 1119.

Plaintiff fails to offer a single case that would demonstrate Defendant was on notice that his alleged actions infringed on Plaintiff's constitutional rights. Instead, Plaintiff simply makes the general assertion that our courts have recognized "class of one" claims. The Court has been unable to find any case law that supports Plaintiff's assertion that the failure to enforce a regulation against a competitor can be grounds for relief under a "class of one" theory of equal protection. Other jurisdictions have addressed similar claims and held that the Equal Protection Clause does not protect against government's failure to enforce a law or regulation against a

competitor. *See EDCO Envtl. Servs. Inc. v. City of Crown Point, Ind.*, No. 2:13-CV-323 JVB, 2014 WL 4680746, at *3 (N.D. Ind. 2014) (acknowledging that no case law exists supporting Plaintiff's claim that the failure to enforce a zoning ordinance against a competitor can be grounds for relief); *Gray v. Town of Easton*, 115 F.Supp.3d 312 (D. Conn. 2015) (holding that "[t]he Equal Protection Clause does not require . . . governments to enforce the law against everyone or against no one at all."); *Scherer v. City of Merriam*, No. CIV.A. 01-2092-KHV, 2002 WL 1067458, at *3 (D. Kan. 2002) ("In general, provided that an ordinance is rationally based, the failure to enforce it with complete equality does not of itself infringe the constitutional principle of equal protection.").

As Judge Posner has explained, "The Constitution does not require states to enforce their laws (or cities their ordinances) with Prussian thoroughness as the price of being allowed to enforce them at all." *Hameetman v. City of Chicago*, 776 F.2d 636, 641 (7th Cir. 1985). The alleged failure to enforce PRC licensing requirements against Plaintiff's competitors "no more singles out Plaintiff for discriminatory treatment than a law abiding motorist could be considered to be targeted for discriminatory treatment because the police did not issue a ticket to a speeder." *EDCO Envtl. Servs. Inc.*, 2014 WL 4680746 at *3.

Lastly, Plaintiff's conclusory assertion that "such disparate treatment can only be related or must on some level be motivated by his national origin" lacks the required specificity to survive dismissal. Such a claim is not entitled to an assumption of truth under the standard set forth in *Twombly* and *Iqbal*. *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1193-94 (10th Cir. 2012) (finding that the plaintiff's conclusory allegations of discrimination on the basis of race, religion, and national origin were insufficient because they provided no facts regarding the alleged discrimination).

II.   Count II: Retaliation for Reporting Unlicensed Operation

Count II of the Amended Complaint alleges that Plaintiff was "unjustly and unfairly singled out by the Defendant and subjected to 'investigation' for alleged violation of statute and/or regulation." [Doc. 21 ¶ 40]. This Count is also brought under the "class of one" theory of equal protection.

"The paradigmatic 'class of one' case . . . is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011) (quoting *Lauth v. McCollum,* 424 F.3d 631, 633 (7th Cir.2005)). To prevail under this theory, a plaintiff must establish (1) that others, "similarly situated in every material respect were treated differently, and (2) that "this difference in treatment was without rational basis." 656 F.3d at 1216. "This standard is objective—if there is a reasonable justification for the challenged action, we do not inquire into the government actor's actual motivations." *Id.* The Tenth circuit approaches class-of-one claims with caution, and has "recognized that, unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004); *see also Kansas Penn Gaming, LLC*, 656 F.3d at 1216.

The Tenth Circuit has placed a "substantial burden" on plaintiffs to demonstrate that "others, similarly situated in every respect received different treatment." *Kansas Penn Gaming, LLC*, 656 F.3d at 1216-17. Plaintiffs must offer enough specific factual allegations to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 1219. The infrequent or

inconsistent enforcement of a government regulation is not, on its own, sufficient to state a "class of one" claim. Plaintiff "must also allege that some number of . . . [other luxury car services] receiving different treatment were also similarly situated, thereby indicating that the enforcement action was arbitrary or for some improper motive." *Id.* at 1220. Moreover, it is not enough to simply allege that other car services are "comparable" or "similar." *Id.* "The claim must be supported by *specific facts* plausibly suggesting [that] the[y] . . . are similar in all material respects." *Id.* (emphasis added).

With respect to Count II, Plaintiff alleges that he was subjected to "unjust" and "unfair" investigation relating his alleged violation of inspection "statute and/or regulation." [Doc. 21 ¶ 40]. Specifically, Plaintiff alleges that he was audited twice after filing a complaint against Devine Limo. Plaintiff also alleges that the PRC conducted an investigation into an accident involving one of Plaintiff's vehicles, which caused embarrassment and inconvenience. These audits and inspections, according to Plaintiff, were done in retaliation for Plaintiff reporting the alleged unlicensed operation of other car services to the PRC. Importantly, Plaintiff chose to plead a "class of one" equal protection claim, not a retaliation claim. Accordingly, Plaintiff is required to plausibly allege that other similarly situated businesses were treated differently.

In this regard, Plaintiff's Amended Complaint fails. Plaintiff does not allege that any other car service violated the same "statute and/or regulations," but was not subjected to the same inspection. The Amended Complaint only alleges that the PRC audited and investigated Plaintiff for "alleged violation of statute and/or regulation." Plaintiff does not provide any information regarding which statute or regulation he was audited and investigated for violating, let alone that other similarly situated car services violated them. Accordingly, Plaintiff has failed to overcome the "substantial burden" that the Tenth Circuit has imposed on "class of one" claims

to allege that others similarly situated in every respect have been treated different. *Kansas Penn Gaming, LLC*, 656 F.3d at 1216-17 (placing a "substantial burden" on plaintiffs to demonstrate that "others, similarly situated in every respect received different treatment."). Because Count II fails to state the essential elements of a "class of one" equal protection claim, Plaintiff fails to state a constitutional violation and Defendant is entitled to qualified immunity.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Defendant is entitled to qualified immunity from Plaintiff's "class of one" equal protection claims. Count I must be dismissed because Plaintiff has failed to demonstrate that the failure to intervene to prevent the unlicensed operation of a competitor business violated clearly established law. Count II must be dismissed for failure to state a constitutional violation: Plaintiff has failed to allege that other businesses similarly situated to Plaintiff violated the same statute or regulation, but were not subjected to the same inspection. Because Plaintiff has not met his burden in order to overcome the defense of qualified immunity, both Counts must be dismissed. *See Albright*, 51 F.3d at 1534.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss is **GRANTED.**

DATED this 21 day of June, 2017.

_____
MARTHA VÁZQUEZ
United States District Judge

Santiago E. Juarez                                Quentin Smith
Law Office of Santiago E. Juarez    Sheehan & Sheehan, P.A.
*Attorney for Plaintiff*                        *Attorney for Defendant*